# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34516

| | | |
|---|---|---|
| CHRIS M. DUNAGAN, | ) | |
| | ) | Moscow, April 2009 |
| Plaintiff/Respondent, | ) | |
| v. | ) | 2009 Opinion No. 82 |
| | ) | |
| KELLY A. DUNAGAN, | ) | Filed: June 9, 2009 |
| | ) | |
| Defendant/Appellant. | ) | Stephen W. Kenyon, Clerk |
| | ) | |

Appeal from the Second Judicial District of the State of Idaho, Clearwater County. Hon. John R. Stegner, District Judge.

The decision of the district court is <u>reversed</u> and this case is <u>remanded</u> to the district court for further proceedings.

Jones, Brower & Callery, P.L.L.C., Lewiston, for appellant. Garry Jones argued.

Clark & Feeney, Lewiston, for respondent. Paul Clark argued.

_____

W. JONES, Justice

## NATURE OF CASE

This is an appeal from the district court's order affirming the magistrate court's order regarding the distribution of property in a marital dissolution action.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/Respondent Chris Dunagan (Dunagan) and Defendant/Appellant Kelly Dunagan (Kircher)[1] were married in 2000. The parties separated in 2005 and an interlocutory divorce was entered in 2006.

At the time Dunagan and Kircher entered into marriage, they orally agreed that they would keep their finances separate. During their marriage, Dunagan and Kircher kept their finances separate, except on two occasions when Dunagan gave $500 to Kircher. Kircher paid all insurance and other payments on the house and her business.

---

[1] Kelly Dunagan currently uses her maiden name, Kelly Kircher.

Prior to the marriage, Kircher operated a business called the Krystal Café; neither party disputes that the business is Kircher's separate property. In 2000, the parties jointly acquired the real property and building (the Krystal Café building) where the Krystal Café business is presently located. Of the $90,000 purchase price, the parties financed $80,000 through a joint bank loan. Kircher and Dunagan were both placed on the title to the Krystal Café building; this property is not at issue on appeal.

In late 2003, the residential property separately owned by Kircher was refinanced through Zions Bank. As a condition of the refinancing, the bank required Kircher to quitclaim her interest in her home to "Kelly Dunagan and Chris Dunagan, wife and husband." During trial, over Dunagan's objection based on the parole evidence rule, Kircher attempted to testify that she signed a lot of paperwork at closing and did not realize that she was giving up any interest in her home to Dunagan. Kircher also attempted to testify that she would not have signed the form had she understood she was giving an interest in her property to Dunagan. The court excluded Kircher's testimony, but allowed her to make an offer of proof that she had made all the payments on the home from her earnings, including property taxes, insurance and utilities.

After hearing testimony, the magistrate court decided that the property would be divided substantially equally between the parties because the court was not convinced that there were compelling reasons to do otherwise. The court assigned the house as community property, based on Kircher's legal quitclaim transfer of the house from herself to the marital community. The magistrate court also held that Dunagan was entitled to an equalization payment from Kircher of $108,500. The court granted Kircher sixty days from the date of the court's decision in which to make the payment. If Kircher made such payment in full within sixty days, Dunagan would be required to sign over and release to Kircher all interest in the Krystal Café building. If Kircher did not make the equalization payment within the prescribed time, Kircher was required to put up the Krystal Café building for sale in a commercially reasonable manner because there was no other property available with which to make the equalization payment to Dunagan.

Kircher appealed to the district court, which affirmed the magistrate court. Kircher now appeals to this Court.

**ISSUES PRESENTED**

a. Whether the trial court abused its discretion in failing to consider the parties' partial performance of their alleged oral prenuptial agreement?

b. Whether the trial court abused its discretion in failing to consider the circumstances surrounding the house as a compelling reason to order an unequal disposition of the community property?

c. Whether the trial court abused its discretion in the manner it decided the sales proceeds of the Krystal Café building were to be distributed in equalizing the distribution of community assets?

## STANDARD OF REVIEW

When this Court reviews a decision rendered by a district court acting in its appellate capacity, it considers the trial court's decision, and if that decision is free from error and if the district court affirmed that decision, we affirm the district court's decision as a matter of procedure. *In re Estate of Montgomery*, __ Idaho __, __, __ P.3d __, __ (2009) (citing *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)). This Court has free review of the legal issues analyzed by the district court acting in its appellate capacity. *Carter v. Zollinger*, 146 Idaho 842, __, 203 P.3d 1241, 1243 (2009) (citing *Losser*, 145 Idaho at 672, 183 P.3d at 760).

Division of community property in a divorce action is squarely within the discretion of the trial court. See *Stewart v. Stewart*, 143 Idaho 673, 677, 152 P.3d 544, 548 (2007). Review of a lower court's exercise of discretion is conducted under a three-tiered inquiry: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Id.* (internal quotations and citations omitted).

## ANALYSIS

**The doctrine of partial performance is not a recognized exception to the statute of frauds for oral prenuptial agreements in Idaho.**

Kircher argues that this Court should, for the first time, apply the doctrine of partial performance to oral prenuptial agreements. Idaho recognizes the doctrine of partial performance, which is an exception to the statute of frauds that permits a court to compel specific performance of an agreement not in writing that has been partly performed. I.C. § 9-504; see also *Simons v.*

3

*Simons*, 134 Idaho 824, 827, 11 P.3d 20, 23 (2000); *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 722, 874 P.2d 528, 533 (1994).  Additionally, I.C. § 32-712 provides that the trial court must assign community property with due consideration, in part, to any prenuptial agreement of the parties.  However, Idaho courts have remained firm in holding that "although a husband and wife may transmutate property at any time during marriage, they must conform with statutory formalities."  *Reed v. Reed*, 137 Idaho 53, 59, 44 P.3d 1108, 1114 (2002) (citing *Wolford v. Wolford*, 117 Idaho 61, 66, 785 P.2d 625, 630 (1990)).  I.C. § 32-917 requires that "All contracts for marriage settlements must be *in writing*, and executed and acknowledged or proved in like manner as conveyances of land are required to be executed and acknowledged or proved."  (Emphasis added).  Thus, Idaho courts will only recognize and enforce a prenuptial agreement if it is in writing and properly executed and acknowledged.

Kircher asserts that Idaho should follow other jurisdictions and adopt the partial performance exception to the statute of frauds for oral prenuptial agreements.  To support her argument, Kircher relies on authority from other jurisdictions that are neither binding on nor persuasive to this Court.  Specifically, she points to *Hall v. Hall*, 222 Cal. App. 3d 578, 271 Cal. Rptr. 773 (1990) (applying the partial performance exception to the statute of frauds in upholding an oral prenuptial agreement between parties that irretrievably changed their positions when the husband convinced the wife to marry him, give up her job, apply for Social Security early, and give him $10,000 in exchange for his promise that she could live in his home for the rest of her life) and *DewBerry v. George*, 115 Wash. App. 351, 62 P.3d 525 (2003) (relying on well-established Washington law that recognizes oral separate property agreements made after marriage to uphold an oral prenuptial agreement between parties that took "painstaking" steps to avoid commingling their assets).  Although California and Washington courts have recognized and applied the doctrine of partial performance to oral prenuptial agreements, there is no controlling Idaho authority that authorizes this Court to do the same.  Idaho has not waivered in requiring that marriage agreements that purport to characterize community property as separate property must meet strict statutory formalities; Kircher has failed to persuade us to change course now.  Accordingly, we hold as a matter of law that the district court properly affirmed the magistrate court's refusal to consider evidence of the parties' partial performance of their alleged oral prenuptial agreement to keep their property separate.

**The magistrate court failed to recognize its discretion to consider Kircher's claimed compelling reasons in deciding whether to divide the house in a substantially equal manner.**

Kircher argues the trial court erred in failing to consider the circumstances surrounding the house as a compelling reason to order an unequal disposition of the community property. Specifically, Kircher argues that the parties were successful in executing their agreement to keep their assets separate until only a short time before the divorce when the bank required both parties to be placed on the deed to the house. In response, Dunagan argues that when Kircher executed the quitclaim deed, she transmuted the house from separate to community property; the transmutation complied with the statutory requirements of the Idaho Code and therefore the district court properly affirmed the magistrate court's decision to treat the house as an asset of the community rather than as Kircher's separate property. The magistrate court refused to order an unequal distribution of the house because it found that Kircher failed to persuasively explain her claimed compelling reasons for an unequal division of property and failed to present admissible evidence that might have provided the court with grounds to consider more than the plain language of the deed.

All property that is acquired after marriage by either husband or wife is community property, including property that is owned separately by one spouse who then deeds such property to the marital community. See I.C. § 32-906. Division of community property in a divorce action is squarely within the discretion of the trial court. *Stewart*, 143 Idaho at 677, 152 P.3d at 548. "Unless there are compelling reasons otherwise, there shall be a substantially equal division in value, considering debts, between the spouses." I.C. § 32-712(1). Factors which may bear upon whether a division shall be equal, or the manner of division, include, but are not limited to:

> (1) Duration of the marriage;
> (2) Any prenuptial agreement of the parties; provided, however, that the court shall have no authority to amend or rescind any such agreement;
> (3) The age, health, occupation, amount and source of income, vocational skills, employability, and liabilities of each spouse;
> (4) The needs of each spouse;
> (5) Whether the apportionment is in lieu of or in addition to maintenance;
> (6) The present and potential earning capability of each party; and
> (7) Retirement benefits, including, but not limited to, social security, civil service, military and railroad retirement benefits.

I.C. § 32-712(1)(b). However, the inquiry does not end with the characterization of the property; rather, the inquiry becomes whether the magistrate court properly recognized its discretion to order an unequal disposition of the community property based on compelling reasons surrounding the transmutation.

Kircher attempted to testify that she did not realize she was transferring an interest in her house to Dunagan when she quitclaimed an interest to him. Dunagan had no interest in the home at the time of the marriage and Kircher made all payments on the house and utilities throughout the marriage. Kircher stated to the court: "The only reason that Dunagan has a community interest in the home is because the bank required Dunagan to be on the loan." The magistrate court judge stated during trial:

> [W]hen I look at the statute it states that unless there are compelling reasons otherwise there shall be a substantially equal division in value considering debts between the spouses, and then it lists factors that may bear upon whether a division shall be equal. And it doesn't limit it to those factors, but they are factors . . . So I have problems squeezing your arguments of this oral agreement into one of the factors or a like factor as described in Idaho Code Section 32-712.

The magistrate judge expressed that he did not believe he could fit evidence of an alleged oral prenuptial agreement into the kind of circumstances he was permitted to consider in ordering an unequal division of property. However, under I.C § 32-712(1), the court had discretion to consider *any* compelling reasons presented by the parties. As such, the court failed to properly recognize its discretion to consider the oral prenuptial agreement and the circumstances surrounding the quitclaim deed as a compelling reasons, outside of the factors specifically listed in I.C. § 32-712(1), to order an unequal division of property.

To be clear, courts do not have discretion under I.C. § 32-712(1) to consider compelling reasons to alter the terms of a deed that is plain on its face. Here the deed is unambiguous and transmuted Kircher's separate property to community property, but oral evidence which is not admissible to vary the terms of the deed is nevertheless admissible to show compelling reasons to justify an unequal division of that community property under I.C. § 32-712(1). In this case, the magistrate court should have recognized that it had discretion to consider Kircher's testimony about the oral prenuptial agreement and the circumstances surrounding the execution of the deed to determine whether an unequal division of property would have been appropriate. We do not opine whether sufficiently compelling reasons are present in this case, but only that such reasons

might be present here and it is within the magistrate court's discretion to so decide. The magistrate court acts within its discretion if it rightly perceives the issue as one of discretion, acts within the outer boundaries of such discretion and consistently with any applicable legal standards, and reaches its decision by an exercise of reason. *Stewart*, 143 Idaho at 677, 152 P.3d at 548. We hold the district court erred in affirming the magistrate court's decision because the magistrate court did not recognize that it had discretion to consider whether Kircher's claimed reasons were compelling enough to order an unequal division of property. Thus, we remand to the magistrate court for further proceedings.

**The equalization payment is vacated and remanded.**

The magistrate court ordered Kircher to either pay an equalization payment of $108,500 to Dunagan within sixty days of the court's decision or to sell the building where the Krystal Café was located so Kircher could make the equalization payment. The equalization payment amount may change depending on how the magistrate court handles the division of the house on remand. Thus, the equalization payment and order for sale of the building are vacated and this case is remanded for further proceedings consistent with this Opinion.

## CONCLUSION

We reverse the district court's decision and remand this case to the district court for further proceedings.


Chief Justice EISMANN, Justices BURDICK, J. JONES and J. *pro tem* REINHARDT, **CONCUR.**