IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35763

GREGORY PAUL BARRETT,      )
                                    )       **Boise, January 2010 Term**

    **Plaintiff-Appellant,**        )

                                    )       **2010 Opinion No. 43**

**v.**                               )

                                    )       **Filed: April 23, 2010**

**ANN MARIE BARRETT,**      )

                                    )       **Stephen Kenyon, Clerk**

    **Defendant-Respondent**      )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge. Hon. Earl Blower, Magistrate Judge.

The decision of the district court is <u>affirmed</u>.

Royce B. Lee, P.A., Idaho Falls, for appellant.

Thompson Smith Woolf & Anderson, PLLC, Idaho Falls, for respondent. Aaron Woolf argued.

---

HORTON, Justice

This is an appeal from the district court's decision on appeal from the magistrate court. In this appeal, we are asked to determine the character of property located in Etna, Wyoming (the Etna property) and disputed in the divorce proceedings between Gregory Barrett (Greg) and Ann Marie Barrett (Ann). The Etna property was originally Ann's separate property. During the marriage, in connection with refinancing the Etna property, Ann executed a quitclaim deed to Ann and Greg as tenants by the entirety. The magistrate judge found that the language of the quitclaim deed was clear, that Ann's testimony regarding her intent in signing the deed was therefore inadmissible and concluded that the Etna property was transmuted to community property. On appeal, the district court held that trial judges have leeway to consider additional evidence in the context of refinancing and remanded for the magistrate judge to determine whether Greg met his burden in showing that transmutation had occurred. Greg timely appealed. We affirm the decision of the district court.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Prior to her marriage to Greg, Ann was married to Kevin Spencer. They divorced in 1996 and, as part of the divorce settlement, Ann was awarded the Etna Property now in dispute. In 1997, Ann and Greg were married in Idaho Falls. At the time of the marriage, Ann owed $123,961 on a debt secured by the Etna property and, until 1999, made monthly payments toward the debt from her separate checking account. In 1999, Ann sold approximately 2.5 acres of the property to pay off the debt on the Etna property. As the magistrate judge explained,

> [t]o close on that sale, Ann had to pay off the existing mortgage debt . . . . To pay that debt, she and Gregory borrowed $34,512 from the Bank of Star Valley (BSV), giving a promissory note that they both signed. Ann also signed a quitclaim deed conveying the remaining Etna acreage to "Ann Barrett and Gregory Barrett, Wife and Husband as Tenants by the Entireties," and then she and Gregory signed a new mortgage in favor of BSV, pledging the property to secure repayment of the $34,512 loan.

The quitclaim deed was one of a number of documents related to the sale and refinancing. At trial, Ann testified that she would not have signed the quitclaim deed had she understood that she was giving Gregory a one-half interest in the property. From the time of the refinancing until 2003, Ann made payments on the BSV debt from a separate checking account. In 2003, Ann and Greg opened a joint checking account and Ann made payments on the debt from that checking account. At the time of the divorce trial, the debt was reduced to $22,881.

On August 29, 2005, Greg filed for divorce and, on September 14, 2005, Ann filed a counterclaim for divorce. Originally, Ann requested an unequal distribution of the community property; she later abandoned this request. Later in 2005, Ann sold two additional acres of the Etna property, the proceeds of which were placed in her attorney's trust account. The divorce trial, involving questions of the grounds for divorce, custody and child support, division of property and debt, and Ann's request for attorney fees, took place from June 18-22, 2007. On July 3, 2007, the magistrate judge entered a decree of divorce, effective *nunc pro tunc* June 22, 2007. On August 30, 2007, the trial court decided the issues relating to the grounds for the divorce and child custody and support. On September 11, 2007, the magistrate judge entered Findings of Fact and Conclusions of Law on Property and Debt Division and Attorneys Fees. The appeal before this Court presents only the question of the character of the Etna property.

The magistrate judge found the quitclaim deed to be clear and unambiguous. Accordingly, although there was testimony during the trial regarding the execution of the

2

quitclaim deed, the trial judge did not consider Ann's testimony, finding it to be inadmissible parol evidence. Rather, the trial court ruled that Ann's execution of the quitclaim deed transmuted the Etna property into community property.

Ann appealed to the district court. The district court ruled that "courts are granted much broader leeway in considering parol evidence in situations where an otherwise unambiguous document is part of a refinancing situation . . . . In such situations, the intentions of the parties are rarely clear simply from reading a document prepared by a third party." The district court found that the magistrate judge should have considered parol evidence and remanded the case for further proceedings.[1] Greg timely appealed.

## II. STANDARD OF REVIEW

On an appeal from a case in which the district court acts in an appellate capacity with regard to a decision of the magistrate judge, this Court reviews the record of the magistrate, affirming or reversing the decision of the district court. *Johnson v. Johnson*, 147 Idaho 912, 915-16, 216 P.3d 1284, 1287-88 (2009). This Court exercises free review over conclusions of law. *Bliss v. Bliss*, 127 Idaho 170, 172, 898 P.2d 1081, 1083 (1995). Division of property is a factual question, left to the sound discretion of the trial judge. *Id.* "Appellate courts . . . are not permitted to substitute their own view of the evidence for that of the trial court, or to make credibility determinations." *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007) (citing *McGriff v. McGriff*, 140 Idaho 642, 645, 99 P.3d 111, 114 (2004)). The relevant inquiry in determining an abuse of discretion "is whether the trial court (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the choices before it; and (3) reached its decision by an exercise of reason." *Hopper v. Hopper*, 144 Idaho 624, 626, 167 P.3d 761, 763 (2007).

## III. ANALYSIS

In deciding this appeal, we consider only Idaho law, as neither party has argued that Wyoming law should apply in determining the character of the Etna property.[2]

### A.    Evidence beyond a deed is admissible to show or disprove transmutation.

---

[1] Following the district court's decision, on September 17, 2008, the magistrate judge entered Additional Findings of Fact & Conclusions of Law Following Remand. As a result of the appeal to this Court, on November 5, 2008, the magistrate judge withdrew those findings. We have not considered those additional findings on this appeal.

[2] We apply Idaho law based on the principle that it is the burden of a party relying on foreign law to both plead and prove the application of that law. I.R.C.P. 44(d).

The trial court in a divorce proceeding is charged with identifying and assigning the parties' interest in the community property. I.C. § 32-712 ("In case of divorce by the decree of a court of competent jurisdiction, the community property and the homestead must be assigned…."). Idaho Code § 32-713 reiterates this obligation: "[t]he court, in rendering a decree of divorce, must make such order for the disposition of the community property…." As it is undisputed that the Etna property was Ann's separate property at the time of the parties' marriage, the inquiry is whether the character of that property changed during the marriage.

The determination whether property has been transmuted, from separate to community property or vice versa, is, as we have long stated, a question of intent. *Hoskinson v. Hoskinson*, 139 Idaho 448, 459, 80 P.3d 1049, 1060 (2003); *Suchan v. Suchan*, 106 Idaho 654, 664, 682 P.2d 607, 617 (1984); *In re Bogert's Estate*, 96 Idaho 522, 526, 531 P.2d 1167, 1171 (1975); *see also Ustick v. Ustick*, 104 Idaho 215, 222, 657 P.2d 1083, 1090 (Ct. App. 1983); *Griffin v. Griffin*, 102 Idaho 858, 861, 642 P.2d 949, 952 (Ct. App. 1982). The party asserting transmutation must prove the claim by clear and convincing evidence.

> [W]here it is asserted . . . that a spouse intended to transmute property or to make a gift, the burden is on the party urging the assertion to prove the intent in question by clear and convincing evidence. Concomitantly, because the question of whether a "clear and convincing" burden of proof has been met is a question for the trier of facts to decide in the first instance, the determination of the trial judge-that a claim was not shown by clear and convincing evidence-is entitled to great weight on appeal.

*Hoskinson*, 139 Idaho at 459, 80 P.3d at 1060 (quoting *Ustick*, 104 Idaho at 222, 657 P.2d at 1090).

In this case, the magistrate judge considered this Court's decisions in *Hall v. Hall*, 116 Idaho 483, 777 P.2d 255 (1989) and *Bliss v. Bliss*, 127 Idaho 170, 898 P.2d 1081 (1995), and held that "the [quitclaim] deed shows no ambiguity, and the court finds that it transmuted the Etna real estate from separate property to community property." Although the trial court's interpretation of *Hall* and *Bliss* is understandable, we conclude that the language of a deed executed in the course of refinancing does not conclusively determine the character of property for purposes of a divorce action. Rather, the intention of the party or parties executing the deed is dispositive. Thus, neither I.C. § 55-606 nor the statute of frauds governs because the pertinent question is not the effectiveness of the deed. Although the trial judge, as the finder of fact, may

4

consider a deed as evidence in determining intent, it is not the only evidence available to a judge considering the question of transmutation.

This Court has previously allowed courts to look to a variety of factors in determining the character of property. In *Hoskinson*, while recognizing that marriage settlement contracts require formalities, the Court felt free to look to additional testimony to ascertain the intent of the parties. 139 Idaho at 459-60, 80 P.3d at 1060-61. Similarly, in *Winn v. Winn*, 105 Idaho 811, 673 P.2d 411 (1983), involving a property purchase concluded some months after the marriage using separate property of the husband, the Court considered a variety of factors to be considered in the absence of the parties' "actual, articulated intent": (1) whether the community was liable for payment on the loan; (2) the source of the payments toward the loan; (3) the basis of credit upon which the lender relied in making the loan; (4) the nature of the down payment; (5) the names on the deed; and (6) who signed the documents of indebtedness. *Id.* at 814-15, 673 P.2d at 414-15. This Court explained:

> [t]he presence or absence of any or all of the above listed factors is relevant in determining the character of the credit by which a loan is obtained. None is conclusive. We deliberately refrain from selecting one item as dispositive. Such an approach is too rigid in light of our ultimate purpose of determining the likely intent of the spouses and in consideration of the highly individualistic and often complex fact situations presented.

*Id.* at 815, 673 P.2d at 415. The fact that *Winn* involved the purchase of new property rather than the question of whether existing property was transmuted does not change the analysis here. *Winn* was clear in its holding that evidence beyond the deed itself could be introduced to determine the character of property even where that determination might differ from the language of the deed.

We recognize that some of our cases have employed language that would suggest the opposite conclusion. In *Hall v. Hall*, this Court stated that "[w]here the language of a deed is plain and unambiguous, the intention of the parties must be determined from the deed itself, and parol evidence is not admissible to show intent." 116 Idaho at 484, 777 P.2d at 256; *see also Dunagan v. Dunagan*, 147 Idaho 599, 603, 213 P.3d 384, 388 (2009); *Bliss*, 127 Idaho at 174, 898 P.2d at 1085. However, these statements have obscured decisions that are otherwise consistent with the rule expressed today.

In *Dunagan*, there was no challenge on appeal to this Court from the determination that the execution of a quitclaim deed in favor of husband and wife during refinancing transmuted the

5

wife's separate property. On appeal, the primary question presented to this Court was whether a substantially equal distribution of the community property was appropriate. Thus, the Court's statement that "courts do not have discretion under I.C. § 32-712(1) to consider compelling reasons to alter the terms of a deed that is plain on its face" was dictum. *Dunagan*, 147 Idaho at 603, 213 P.3d at 388.

In *Bliss*, the husband executed a quitclaim deed to his wife in order to prevent the Internal Revenue Service (IRS) from attaching the property to satisfy a previous tax liability. 127 Idaho at 171-72, 898 P.2d 1082-83. This Court upheld the determination that the property was the wife's separate property. The reasoning behind this decision is clear: in order to avoid seizure of the property by the IRS, husband intended to convey the property to wife. Indeed, a contrary result would have placed the Court in a position of not only condoning, but facilitating tax evasion. Because "a court of equity will not knowingly aid in the furtherance of an illegal transaction," the husband's testimony was properly excluded. *Stearns v. Williams*, 72 Idaho 276, 290, 240 P.2d 833, 842 (1952).

Finally, *Hall* is distinguishable on two separate grounds. First, *Hall* concerned a deed from a third party (the husband's grandmother), and therefore takes it outside the question of the character of property established within the marriage. *Hall*, 116 Idaho at 483-84, 777 P.2d at 255-56. Second, *Hall* is notable for its fractured decision. Of the five justices, Justices Huntley and Johnson voted to exclude parol evidence, while Justice Bistline concurred, finding that clear and convincing evidence had not been presented. Chief Justice Bakes dissented and would have remanded for additional factual findings, and Justice Shepard did not participate due to his untimely death. *Id.* at 484, 495, 777 P.2d at 256, 267. This Court has previously stated that, "where the third vote necessary to pronounce a decision is by a justice who concurs in the result only, the rationale contained in the opinion is not a decision of the Court and is not controlling in other cases." *Osick v. Pub. Employee Ret. Sys. of Idaho*, 122 Idaho 457, 460, 835 P.2d 1268, 1271 (1992).[3]

Although this Court possesses authority to revise the disposition of community property on appeal, I.C. § 32-714, the determination whether property has been transmuted is a question of fact turning on intent. In making this factual determination, trial courts are free to consider all

---

[3] We note that Chief Justice Bakes subsequently questioned the continuing validity of *Hall* in his special concurrence in *Treasure Valley Bank v. Butcher*, which allowed parol evidence in characterizing a deed of trust. 117 Idaho 974, 979, 793 P.2d 206, 211 (1990) (Bakes, C.J., concurring).

relevant evidence regarding that intent. We therefore affirm the district court's decision to remand the case to the magistrate judge for consideration of additional evidence.

In light of this decision, we do not reach the question of whether Ann would be entitled to an unequal division of the community property under I.C. § 32-712(1)(a). In the event that the magistrate judge determines that the Etna property is community property, he should further decide whether that determination constitutes compelling circumstances warranting an unequal division of community property. *Dunagan*, 147 Idaho at 603, 213 P.3d at 388.

Greg has asked this Court to decide whether he met his burden of proof to show a transmutation. We decline to do so. As noted, this is a factual question of intent. "It is not the function of this Court to make findings of fact." *Walter v. Potlatch Forests, Inc.*, 94 Idaho 738, 740, 497 P.2d 1039, 1041 (1972).

**B.      We do not award attorney fees to Ann.**

Ann has requested attorney fees under I.C. § 12-121. Under this provision, attorney fees may be awarded only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Cole v. Esquibel*, 145 Idaho 652, 656, 182 P.3d 709, 713 (2008). In light of this Court's earlier decisions which suggested that deeds are to be given conclusive effect, we conclude that Greg did not unreasonably pursue this appeal. We therefore decline to award attorney fees.

## IV. CONCLUSION

We hold that trial courts may consider evidence beyond an unambiguous deed when deciding claims of transmutation of property. We therefore affirm the decision of the district court. We deny Ann's request for attorney fees but award costs to her as the prevailing party on appeal.

Chief Justice EISMANN and Justice BURDICK **CONCUR**.

J. JONES, J., specially concurring.

I fully concur in the Court's opinion but think it appropriate to offer a cautionary comment to lending institutions who require a change in ownership of real property that a husband and wife are attempting to refinance. Here, the bank apparently required that the property be held jointly by the parties and that both sign the promissory note and real estate mortgage. The record does not disclose why the bank deemed it necessary for Ann to deed the

Etna property to her and Greg as tenants by the entirety, except perhaps to get another debtor on the hook for the loan. The record does not indicate that the bank advised Ann of the potential consequences of quitclaiming the property to her and Greg. The bank obviously understood that the property was in Ann's name and likely her separate property, otherwise there would have been no reason for the quitclaim deed to be included in the closing packet.

This case did not involve a claim against the bank and it is not clear what the outcome of such an action would be. However, when a lending institution has a deed prepared that purports to change the ownership status of property and places the same in the refinancing packet for signature by a husband and wife, without calling their attention to the fact that signature of the document could well accomplish an unexpected or unwanted change in the ownership status of the property, it is not impossible that liability might attach under some theory of law. It would seem to be a prudent practice for a lending institution to inquire of a husband and wife whether the property to be financed is their joint or separate property and, if separate, to explain (1) why it might be necessary for a change in the ownership status of the property to occur, and (2) what the possible consequences might be. Just preparing a deed that would accomplish a change in the ownership of the property, tossing it in the closing packet, and hoping for the best, might not be a prudent thing to do. As my high school English teacher, Mrs. Murphy, used to say, this is merely a word to the wise.

W. JONES,  Justice, **dissenting.**

I respectfully dissent from the majority Opinion because I believe the Court has ignored a strong line of precedent regarding parol evidence and the enforcement of deeds.  It seems to me that the Court has judicially created an exception to the parol evidence rule in a refinancing situation regarding deeds between married couples.  The Court gives no reasonable explanation why that situation should be treated differently than deeds between complete strangers or between husbands and wives in situations other than refinancing.  This Court has long consistently held that a deed which is clear and unambiguous on its face cannot be challenged with parol evidence to show the intent of the parties. *Howard v. Perry*, 141 Idaho 139, 141–42, 106 P.3d 465, 467–68 (2005) (citing *Kimbrough v. Reed*, 130 Idaho 512, 515, 943 P.2d 1232, 1235 (1997)).  I believe the magistrate court was entirely correct in its holding that this deed is

clear and unambiguous on its face, which the majority does not dispute, and therefore parol evidence as to the intent of the grantor is inadmissible.

This case is nearly identical to *Dunagan v. Dunagan*, 147 Idaho 599, 213 P.3d 384 (2009), which was decided after this case was heard in the magistrate court and while on appeal to the district court. In that case, as here, the wife owned separate property that she acquired prior to marriage. *Id.* at 600, 213 P.3d at 385. Thereafter, during a second marriage she desired to refinance her separate property and in the course of refinancing, the lender, as here, required that she execute a quitclaim deed to herself and her husband and that her husband also sign the deed of trust and the promissory note. *Id.* When, as here, the couple later divorced, the wife attempted to testify that it was never her intent to transfer an interest in her separate property, but the court rejected that testimony on the ground that the deed was clear and unambiguous and oral testimony regarding an alleged oral prenuptial agreement to keep the parties' properties separate was inadmissible under the parol evidence rule and the statute of frauds. *Id.* at 603, 213 P.3d at 388. Indeed, in the *Dunagan* case, the wife made an offer of proof that even after the execution of the deed to her and her husband, she paid the property taxes, mortgage payments, insurance and utilities from her separate property. *Id.* at 600, 213 P.3d at 385. Nevertheless, the magistrate court held that the deed effectively transmuted the property from separate property to community property. *Id.*

I recognize the wife in *Dunagan* did not appeal the ruling of the district court that the quitclaim deed transmuted the character of the property, but this Court's Opinion in *Dunagan* nevertheless recognized the longstanding rule that oral evidence is not admissible to vary the terms of a deed, stating: "Here the deed is unambiguous and transmuted Kircher's separate property to community property, but *oral evidence which is not admissible to vary the terms of the deed* is nevertheless admissible to show compelling reasons to justify an unequal division of that community property under I.C. § 32-712(1)." *Id.* at 603, 213 P.3d at 388 (emphasis added). This Court in *Dunagan*, therefore, held that the appropriate remedy for the wife was to seek an unequal distribution of the community property under I.C. § 32-712(1) which allows an unequal distribution of such property for "compelling reasons." I believe that is also the appropriate remedy in the present case.

I believe there is no justifiable reason to distinguish refinancing from any other financial transaction regarding real property. Even assuming the Court's Opinion is limited to

9

refinancing, which is not entirely clear, it nevertheless creates a great deal of uncertainty in such transactions. It seems that under the Opinion of the Court, in any case involving refinancing, and perhaps even other financing, the grantor of a deed, whether it be the husband to the wife or the wife to the husband, can later seek to upset the transaction by contending that there was "no intent" to transfer an interest in the property. It seems the spouse seeking to avoid the transaction either in the financing or in a subsequent divorce, as here, could maintain that he or she had no intent to transfer the interest and did not understand either the significance of the deed or that he or she actually transferred an interest in the property. Such an attempt in this case is even more disturbing because it is done in the context of a divorce brought several years after the deed was executed. It is highly suspect that the wife only now asserts she did not understand what she was doing. If the parties to a refinancing agreement or other legal contract are concerned about the legal effects of such contract, it seems prudent that such person should seek legal advice regarding the documents and an explanation of exactly what significance they have. The wife did not seek to do so in the present case. It is to be presumed that she read the deed and understood what she was doing when she signed it. *Liebelt v. Liebelt*, 118 Idaho 845, 849, 801 P.2d 52, 56 (Ct. App. 1990) (stating "[o]ne may be estopped by his own negligence to deny liability on a written instrument signed by him without having read it where he had an opportunity to read the instrument and was not fraudulently dissuaded or prevented from reading it." (citing *West v. Prater*, 57 Idaho 583, 594, 67 P.2d 273, 278 (1937))).

Another significant factor in the present case is that the husband signed the deed of trust and promissory note for the loan thereby subjecting himself to individual liability for the debt, which there would be no reason for him to do if he was not receiving some interest in the property. His action clearly benefited the wife because she likely could not have obtained a loan without his doing so. It also seems grossly unfair that although payments were made on the loan by the wife from her separate account for a few years, for several years those payments were made from a joint account of community property. Under the Court's Opinion, the husband paid a portion of those payments even though he might have no interest in the property. Additionally, the record discloses that from the time of the refinancing until the divorce, the husband managed the property, erected a fence on the property and performed other work on the property and during those years, the wife never questioned any ownership interest in the property by the husband. It was only when the divorce surfaced that the wife challenged the validity of the deed

10

saying she had no idea she had transferred an interest in the property to her husband.  Under the circumstances, it appears to me to be nothing more than a very convenient time to recollect that she had no such intention.

Another factor that is relevant to this particular case is that the wife admitted at trial that she knew and understood the effect of a deed was to transfer title to realty and therefore ownership in that realty.  Additionally, the wife had significant previous experience in real estate transactions in which she bought, sold or transferred property with a deed.  Moreover, on the same date the wife signed the Quitclaim Deed to her husband and herself, she jointly signed a deed with her husband for the transfer of two and a half acres of the same property to a third party.  The wife makes no contention she did not understand that by executing that deed she was transferring an interest in the property to others.  It is only regarding the Quitclaim Deed executed to her husband that she contends she never intended to transfer an interest in the property.

In the present case, the wife's Quitclaim Deed complied with all statutory requirements for the conveyance of real property.  Under I.C. § 55-604,  "A fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended."  Moreover, under I.C. § 55-606, "Every grant or conveyance of an estate in real property is conclusive against the grantor . . . ."  Specifically, with respect to real property transfers between husbands and wives, I.C. § 32-906(2) provides that "[p]roperty conveyed by one spouse to the other shall be presumed to be the sole and separate  estate of the grantee and only the grantor spouse need execute and acknowledge the deed . . . ."  The decision in *Hoskinson v. Hoskinson*, 139 Idaho 448, 459–60, 80 P.3d 1049, 1060–61 (2003), upon which the majority Opinion relies, is clearly distinguishable from the present case in that there was an ambiguity created by the existence of two deeds in that case, whereas there is no ambiguity in the deed in the present case.  In addition, the wife did not sign the promissory note in the *Hoskinson* case and therefore did not assume the obligations imposed upon the husband in the present case. *Id.* at 459, 80 P.3d at 1060.

This case is more similar to *Bliss v. Bliss*, 127 Idaho 170, 898 P.2d 1081 (1995).  In that case, the husband deeded property to his wife but testified in the context of a divorce, as here, that he had not intended to transfer his interest in the community property to his wife as separate property. *Id.* at 171–72, 898 P.2d at 1082–83.  This Court noted, just as it should in the present

11

case, that the deed was in writing, signed by the grantor and included the name and address of the grantee and therefore constituted a valid conveyance of legal title to real property under I.C. § 55-601. *Id.* at 174, 898 P.2d at 1085. The Court then noted the presumption under I.C. § 32-906(2) that "[P]roperty conveyed by one spouse to the other shall be presumed to be the sole and separate estate of the grantee." *Id.* The Court clearly rejected the husband's oral testimony as to his intent under the parol evidence rule because the deed was plain and unambiguous, just as it is in the present case. See also *Hall v. Hall*, 116 Idaho 483, 484, 777 P.2d 255, 256 (1989) (rejecting parol evidence of the grantor's intent to contradict the plain and unambiguous language of the deed).

Under the facts and circumstances of the present case, it seems clear to me, as a matter of law, the husband met his burden of proof to show a transmutation of the wife's separate property to community property by clear and convincing evidence. Indeed, the only evidence presented to the trial court established a transmutation had occurred. There is no *admissible* evidence to contradict that transmutation since the only testimony offered by the wife was oral testimony, which is clearly barred by the parol evidence rule. *Rowan v. Riley*, 139 Idaho 49, 54, 72 P.3d 889, 894 (2003) (stating if the language of the contract is plain and unambiguous, the intention of the parties must be determined from the contract itself (citing *Simons v. Simons*, 134 Idaho 824, 827, 11 P.3d 20, 23 (2000))). Accordingly, it is my opinion that this Court has deviated from historical precedent and created an unjustifiable exception to the statute of frauds and this Court's previous case law, at least as to refinancing situations in the context of a divorce. Even if the Opinion is so limited, I expect this Court to be faced with numerous challenges to the validity of clear and unambiguous deeds on the ground that "Golly, gee, I didn't realize I was transferring my property," citing the majority Opinion in this case. Such self-serving statements are clearly suspect when they appear years after the execution of a deed and especially in a contested divorce proceeding. There is substantial competent evidence to support the magistrate court's finding that a transmutation of this property from separate to community occurred by execution of the deed. If any relief is justified, it could only be by virtue of I.C. § 32-712(1) to consider awarding an unequal distribution of property for compelling reasons. *Dunagan*, 147 Idaho at 603, 213 P.3d at 388.