# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48021

RODGER C. SWANSON,

        Plaintiff-Respondent,

v.

JACKIE SWANSON,

        Defendant-Appellant.

)
)  **Filed:  July 30, 2021**
)
)  **Melanie Gagnepain, Clerk**
)
)  **THIS IS AN UNPUBLISHED**
)  **OPINION AND SHALL NOT**
)  **BE CITED AS AUTHORITY**
)
)
)

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Lemhi County. Hon. Stevan H. Thompson, District Judge. Hon. Stephen J. Clark, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming judgment awarding property in divorce action, <u>reversed</u>; award of attorney fees and costs, <u>vacated</u>; <u>case</u> <u>remanded</u>.

Gravis Law, PLLC; Charles B. Bauer, Boise, for appellant. Charles B. Bauer argued.

Herndon & Stosich, PA; James C. Herndon & John L. Stosich, Idaho Falls, for respondent. John L. Stosich argued.

_____

LORELLO, Judge

Jackie Swanson appeals from a decision of the district court, on intermediate appeal from the magistrate court, affirming a judgment awarding property in a divorce action. We reverse the district court's decision on intermediate appeal affirming the judgment, vacate the district court's award of attorney fees and costs, and remand the case.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jackie and Rodger Swanson married in 2000. Both entered the marriage with significant property. Jackie had approximately $730,000 in investments and liquid assets acquired from a

1

prior marriage. Rodger held, among other property, an interest in ranch land. Throughout the marriage, Jackie not only managed the couple's finances, but also invested her assets from the prior marriage and maintained multiple bank accounts exclusively in her name.

In 2013, Rodger sold his interest in the ranch land. The bulk of the proceeds from this sale came years later in May 2016 in the form of a balloon payment of approximately $800,000. By that time, Rodger and Jackie's marriage had deteriorated. About two weeks after the balloon payment, Jackie began transferring money from the couple's joint bank accounts to her personal accounts in "anticipation of divorce." Between late-May and mid-July 2016, Jackie transferred more than $1,000,000, composed largely of ranch sale proceeds, into her personal bank accounts. After discovering these transfers, Rodger filed for divorce in January 2017.

During the ensuing divorce trial, Rodger called an accountant to testify. In addition to testimony tracing the whereabouts of proceeds from the sale of Rodger's ranch land interests, the magistrate court also admitted a report by the accountant that related his analysis of Rodger and Jackie's bank accounts from 2013 onward. In his analysis, the accountant assumed that Jackie entered the marriage with no separate property and assumed the starting balance in all accounts he analyzed was community property. Of relevance to this appeal, the accountant rendered an opinion labeled: "Opinion #15 - Unknown Disbursements." That opinion states:

> I have examined the bank account transactions in this case, and it is my opinion, to a reasonable degree of accounting certainty, that two disbursements totaling $1,130,000.00 were made from accounts held in the name of Jackie Swanson, that could not be traced with the information I was provided. The separate property proceeds portion of the two disbursements is $224,433.06. The remaining $905,566.94 has been traced as community property funds.

The accountant identified Appendix 5 and Appendix 8 to his report as the source of "tracing of unknown distributions and the allocation of separate versus community property." Exhibit 5 traces funds through one of Jackie's Wells Fargo accounts and Exhibit 8 traces funds through one of Jackie's Eastern Idaho Credit Union (EICU) accounts. Exhibit 8 includes the $905,566 figure as a community withdrawal from the EICU account occurring on November 30, 2016.

Jackie's testimony indicated that $130,000 of the $1,130,000 noted in Opinion 15 was invested with a third party and the remaining $1,000,000 was actually her separate property that she had used to purchase four annuities worth a total of $1,000,000. In its findings of fact, the magistrate court stated, in pertinent part:

2

[The accountant] would conclude that there was $1,000,000 of [Rodger's] separate property transferred by [Jackie] to her accounts. There was an *additional $905,566* of community funds which was siphoned off by [Jackie] and transferred to accounts [the accountant] could not identify. Where these funds went could not be identified. Nevertheless, he felt confident that these monies were siphoned off.

(Emphasis added.) Related to these findings, the magistrate court stated that it "[i]nitially . . . considered whether the excess funds were used to fund the annuities, but having concluded [Jackie] had sufficient monies to fund those accounts the disposition of those funds are unknown." Consequently, the magistrate court entered a judgment and decree of divorce that required Jackie to reimburse Rodger $452,783 for his community interest in the $905,566.

Jackie appealed to the district court, challenging various aspects of the property division. The district court affirmed the judgment, concluding (as relevant to this appeal) that the magistrate court properly relied on the accountant's opinions to determine that Jackie dissipated $905,566 in community property.[1] Additionally, the district court held there was "no abuse of discretion by the magistrate court, nor a misapplication of the law" and awarded Rodger attorney fees and costs on intermediate appeal. Jackie again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we

---

[1] The district court did correct a "clerical error" in the magistrate court's judgment and decree of divorce. The decree of divorce and judgment indicated that Jackie owed Rodger $824,341 (including the $452,783 referenced above). Rodger conceded during the intermediate appeal that, based upon the magistrate court's calculations in its findings of fact and conclusions of law, Jackie owed him only $804,341. The district court concluded "that the increase was due to a clerical error" and that the final judgment should be amended to reflect that Jackie owes Rodger $804,341. This reduction did not, however, affect the amount of Jackie's obligation to reimburse Rodger $452,783 related to Opinion 15.

3

review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

Jackie argues that the district court erred by affirming the magistrate court's determination that the $905,566 disbursement from her EICU account on November 30, 2016, was divisible community property. Specifically, Jackie contends that "there was absolutely no evidence (only bare assumptions) to support [the accountant's] opinion that the 'unknown disbursements' were divisible community property." Jackie further argues that the district court erred by awarding Rodger attorney fees and costs on appeal. Rodger responds that "Jackie's argument presumes facts not in evidence" and that she failed to carry her burden of showing the $905,566 disbursement was her separate property. We hold that the district court erred in affirming the magistrate court's property division and awarding attorney fees and costs to Rodger.

### A.    Property Characterization

Characterizing property as either community or separate in a divorce action entails mixed questions of law and fact. *Papin v. Papin*, 166 Idaho 9, 24, 454 P.3d 1092, 1107 (2019). The manner and method by which property is acquired, as well as the parties' treatment of that property, are questions of fact. *Batra v. Batra*, 135 Idaho 388, 391, 17 P.3d 889, 892 (Ct. App. 2001). Characterizing a particular asset, in light of the facts found, is a legal question over which we exercise free review. *Id.* When an asset was acquired and the source of the funds used to purchase it control whether the asset is community or separate property. *Papin*, 166 Idaho at 24, 454 P.3d at 1107. A spouse's separate property includes all property the spouse acquired before marriage or with proceeds of separate property during marriage. *See* I.C. § 32-903; *Papin*, 166 Idaho at 24, 454 P.3d at 1107. There is a rebuttable presumption that property acquired during marriage is community property. *Papin*, 166 Idaho at 24, 454 P.3d at 1107. The party seeking to overcome this presumption bears the burden of proving with reasonable certainty and particularity that the property is separate. *Id.*

After the divorce trial, the magistrate court issued written findings of fact and conclusions of law. As pertinent to this appeal, the magistrate court found that Jackie "admitted transferring $1,010,000 from the savings accounts of the parties . . . into her private account" at another

4

financial institution.  Of the $1,010,000, the magistrate court found $950,000[2] was Rodger's separate property with the remaining $60,000 being community property.  The magistrate court also found that "there is an unknown disposition through [Jackie] . . . totaling $1,130,000" and concluded that, "of that amount $905,566 are community funds," and that "she would be responsible for 1/2 that amount or $452,783."  Consequently, after accounting for community property funds still held in Jackie's bank accounts, the magistrate court determined that Jackie owed Rodger the following amounts:

| | |
|---|---|
| Separate property belonging to [Rodger]: | $   950,000 |
| Community property interests: | |
|    1.  Community property from transfer: | $     30,000 |
|    2.  Community property in accounts: | $     66,461 |
|    3.  Community property interest in unknown distribution: | $   452,783 |
| TOTAL | $1,499,244 |

Taking into account offsets for community property Rodger possessed, the magistrate court ordered Jackie to reimburse Rodger a total of $804,341.

On intermediate appeal, Jackie challenged numerous aspects of the magistrate court's property division.  However, the district court's resolution of only one of those challenges is relevant to this appeal--specifically, whether the magistrate court properly characterized the $905,566 disbursement from Jackie's EICU account as community property.  The district court affirmed the magistrate court's determination, initially observing that the magistrate court reached its decision based "largely" on the assumption expressed in the accountant's report that "the unknown disbursements were community property."  The district court further reasoned:

> An expert who had thoroughly examined all the separate and community funds of the family found that the missing funds were community property.  The testimony at trial established that Jackie largely had control over and unmonitored access to

_____

[2]      It is unclear how the magistrate court determined that $950,000 was Rodger's separate property.  Apparently, the magistrate court found that, when transferring the $1,010,000, Jackie had taken *all* of the ranch sale proceeds.  However, according to the accountant, Rodger received only $945,562.52 for the sale of the ranch--not $950,000.  Additionally, some of the ranch sale proceeds were spent on "community expenditures" ($21,862.21), transferred to an "escrow investment account" ($79,546.39), or remained in Rodger's accounts ($707.34).  Why Jackie should reimburse Rodger for these funds (especially those still in his accounts) is unclear.  Moreover, the accountant opined that Jackie transferred only $843,446.58 of Rodger's separate property from the ranch sale into her accounts.  Accordingly, it appears that Jackie may be overpaying Rodger in excess of $100,000.

the community funds. . . . Jackie produced no evidence at trial to support any other theory regarding the missing funds so the [magistrate court] necessarily relied on the evidence provided.

Thus, the district court concluded there was sufficient evidence to support a determination that the "missing funds were community property and that they were in Jackie's hands." Jackie contends that this conclusion was error because "the district court should have found that [her] testimony entirely disproved" the accountant's assumptions, making the magistrate court's adoption of his opinion reversible error. According to Jackie, the magistrate court did not "base its findings on the 'unknown disbursements'" on substantial, competent evidence. In essence, Jackie contends that she presented sufficient evidence to rebut the presumption that the $905,566 was community property.

The valuation and division of community property are entrusted to the sound discretion of the trial court. *Id.* at 29, 454 P.3d at 1112 (valuation); *Dunagan v. Dunagan*, 147 Idaho 599, 601, 213 P.3d 384, 386 (2009) (division). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). An abuse of discretion occurs when the trial court's exercise of discretion arises from clearly erroneous factual findings. *Kelly v. Kelly*, 165 Idaho 716, 723, 451 P.3d 429, 436 (2019). Factual findings unsupported by substantial, competent evidence are clearly erroneous. *See id.*

Jackie does not challenge the factual finding that she made what the accountant described as "two unknown distributions" totaling $1,130,000. Rather, she challenges the characterization of $905,566 of that amount as community property. Jackie contends that her testimony during the divorce trial showed, at the least, that the $905,566 "was due to the rolling over" of six certificates of deposit she purchased with separate funds into four annuities totaling $1,000,000 purchased during the marriage. Jackie testified that, upon marrying Rodger, she had approximately $730,000 in investments and liquid assets acquired from a prior marriage that she continually invested and realized a profit on while married to Rodger. According to Jackie, she used these ostensibly separate funds to purchase six $145,000 certificates of deposit six months before Rodger received

6

the balloon payment for the ranch sale. Jackie further testified that, about thirteen months later, she used the proceeds from the matured certificates of deposit to purchase four annuities with a total value of $1,000,000.

The magistrate court's factual findings conform with portions of Jackie's testimony. For example, the magistrate court's findings of fact state that, upon entering the marriage, Jackie "did have $730,000 in various investments and accounts which would be used to purchase annuities for [her] children." Additionally, the magistrate court's conclusions of law state:

> The annuities which were at issue were purchased in 2015 prior to the large separate property deposits from the sale from the ranch. [Jackie] had enough separate property to finance this $1,000,000 purchase. [Jackie's] separate property retains its identity.[3]

The most reasonable interpretation of these two determinations, when read together, is that the annuities were Jackie's separate property because she purchased them with her separate funds.

Despite deciding that Jackie had sufficient separate property to purchase the four annuities, the magistrate court expressly rejected Jackie's contention on appeal that the "unknown disbursement" of $905,566 used to purchase the annuities was from the proceeds of the certificates of deposit. The magistrate court's apparent reasoning regarding the $905,566 was that, because Jackie had sufficient separate property to purchase the four annuities, the $905,566 was not used to purchase the annuities. Accordingly, the issue is whether substantial, competent evidence supports the finding that the $905,566 was used for some unidentified reason other than purchasing the annuities.

Although the accountant's report designated the $905,566 as "community funds," the report noted that its designation of any property as community or separate was for "the convenience of the reader, and not an actual opinion as to which assets are separate and/or community." Additionally, when formulating his opinions, the accountant relied upon certain assumptions listed in the preamble of his report. Two of those assumptions were that "deposits during the marriage" were community property, "unless a source of separate property" was identified, and that Jackie owned no separate property before or after the marriage. Essentially,

---

3     This finding conflates the date Jackie purchased the annuities (2016) with the date she purchased certificates of deposit (2015) that were rolled over into the annuities.

7

the accountant's designation of the $905,566 as community property was, in effect, an application of the community property presumption. Thus, the accountant's opinions do not hold independent evidentiary value on the characterization of the $905,566 as separate or community property.

Moreover, neither the accountant's opinions nor the facts and data supporting those opinions show that Jackie did not or could not have used the $905,566 to purchase the annuities. The accountant opined that he "could not trace" the $905,566 with the information that he was provided. In other words, the accountant could not determine what happened to the funds after they were disbursed. The facts and data supporting the accountant's opinion that the disbursement occurred, however, are consistent with Jackie's testimony that she used the $905,566 in the annuity purchase.

As noted, the accountant supported Opinion 15 with Exhibits 5 and 8. Exhibit 8 shows a $1,000,000 transfer from Jackie's EICU account in November 2016. This transfer occurred only two days after the deposit into the account of approximately $882,000, which was the proceeds from the certificates of deposit Jackie purchased in 2015. Thus, the record shows that $1,000,000 of the $1,130,000 of "unknown distributions" identified in Opinion #15 was transferred from the same account into which Jackie deposited the proceeds of her certificates of deposit. According to the accountant's report, this account held $870,539.97 on October 29, 2015. That same day, an $870,000 withdrawal occurred and left a balance of $539.97 in the account. The accountant's report and financial documents Jackie submitted during trial indicate these funds were used to purchase six $145,000 certificates of deposit. Thirteen months later, on November 28, 2016, six deposits of $146,982.07 (totaling $881,892.42) were made into the account. Both the accountant's report and Jackie's trial testimony indicate that these deposits were the proceeds of the matured certificates of deposit. The magistrate court found that these proceeds were eventually "converted" into the four annuities. The proceeds of the certificates of deposit increased the balance of the account from $258,085.85, of which $234,457.94 was Rodger's separate ranch sale proceeds, to $1,139,978.27. Two days later, and with no additional funds having been deposited into the account, the $1,000,000 "unknown distribution," which included the $905,566 at issue on appeal, occurred. This left a balance of $140,024.88 in Jackie's EICU account (all of which was ranch sale proceeds). Considering the balance of the account just prior to the deposit of the proceeds from the six certificates of deposit, those proceeds *must* have been entirely consumed in the

8

$1,000,000 "unknown distribution." As previously stated, the magistrate court found that the proceeds from the certificates of deposit were converted into the annuities. Thus, despite the magistrate court's express finding to the contrary, the record indicates that the $1,000,000 "unknown distribution," which includes the $905,566, must have been (consistent with Jackie's trial testimony) for the purchase of the annuities.

In sum, the record shows that the proceeds of Jackie's six certificates of deposit were deposited into the account from which the $1,000,000 "unknown distribution" occurred. That account held insufficient funds for Jackie to both purchase $1,000,000 of annuities and transfer *another* $1,000,000 to an unknown destination. The magistrate court's finding that Jackie did not use any portion of the $905,566 at issue in this appeal to purchase the annuities lacks the support of substantial, competent evidence. Thus, the magistrate court's finding is clearly erroneous. *See Kelly*, 165 Idaho at 723, 451 P.3d at 436. Accordingly, the magistrate court's characterization of the $905,566 as community property was error. *See id.* This legal error infected the magistrate court's discretionary division of Jackie and Rodger's community property.

Moreover, as set forth above and contrary to the district court's conclusion on intermediate appeal, Jackie did present evidence supporting her theory that the $905,566 transfer was not community property. Thus, the district court erred in affirming the magistrate court's property distribution.

Having determined that the magistrate court erred in its community property division and that the district court erred in affirming that division, we must consider the appropriate remedy. Jackie requests that this Court "reduc[e] Rodger's judgment" by "limiting his community property judgment award to $351,558." However, when a legal error infects a trial court's discretionary decision, the proper appellate remedy is not to usurp the trial court's authority by exercising that discretion ourselves. *H2O Env't, Inc. v. Farm Supply Distribs., Inc.*, 164 Idaho 295, 300, 429 P.3d 183, 188 (2018). Rather, the appropriate remedy is to remand the case for reconsideration in light of the proper legal standard. *Evans v. Sawtooth Partners*, 111 Idaho 381, 387, 723 P.2d 925, 931 (Ct. App. 1986). A trial court's division of community property is a discretionary decision. *Dunagan*, 147 Idaho at 601, 213 P.3d at 386 (2009) (division). Accordingly, the proper remedy in this case is remand for reconsideration of the division of Jackie and Rodger's community property.

**B.      Attorney Fees and Costs on Intermediate Appeal**

Jackie argues that the district court erred by awarding Rodger attorney fees and costs on intermediate appeal.  Specifically, Jackie contends that "Rodger should not have prevailed" in that appeal and "that she had a good faith basis to appeal" other issues she raised on intermediate appeal but did not seek review of in this appeal.  An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation.  *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995).  Costs on appeal are awarded to the prevailing party as a matter of course, unless otherwise provided by law or court order.  *See* I.A.R. 40.  Because Jackie has prevailed in the instant appeal, Rodger is no longer the prevailing party on intermediate appeal.  Accordingly, we vacate the district court's award of attorney fees and costs to Rodger.  *See Griffiths v. Griffiths*, 167 Idaho 287, 305, 469 P.3d 615, 633 (2020).

**C.      Attorney Fees and Costs on the Instant Appeal**

Both Rodger and Jackie request an award of attorney fees and costs for this appeal under I.C. § 12-121 and I.A.R. 40 and 41.  An award of attorney fees under I.C. § 12-121 and costs under I.A.R. 40 may be awarded only to the prevailing party.  *Griffiths*, 167 Idaho at 306, 469 P.3d at 634.  Rodger is not the prevailing party in this appeal.  Consequently, he is not entitled to an award of either attorney fees or costs.

Jackie argues that she is entitled to an award of attorney fees under I.C. § 12-121 because "Rodger has not responded in good faith to [her] appeal and has advanced several frivolous arguments regarding community property."  Again, an award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation.  We cannot conclude that Rodger defended Jackie's appeal frivolously, unreasonably, or without foundation.  Therefore, an award of attorney fees is improper.  Jackie is entitled, however, to costs as the prevailing party.  *See* I.A.R. 40.

10

# IV.

## CONCLUSION

The district court erred by affirming the magistrate court's conclusion that Jackie made "unknown disbursements" of $905,566 in community property and by awarding Rodger attorney fees and costs on intermediate appeal. Consequently, the district court's decision, on intermediate appeal from the magistrate court, affirming the judgment awarding property in the divorce action, is reversed; the district court's award of attorney fees and costs on intermediate appeal to Rodger is vacated; and the case is remanded for further proceedings consistent with this opinion. Costs on appeal to this Court are awarded to Jackie.

Chief Judge HUSKEY and Judge GRATTON, **CONCUR**.